UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CRAIG JOSEPH BERTHELOT, JR.,　　　　　　CIVIL ACTION
INDIVIDUALLY AND O/B/O HIS
MINOR CHILDREN, HANNAH E.
BERTHELOT AND CRAIG J.
BERTHELOT

VERSUS　　　　　　　　　　　　　　　　NO: 09-4460

MURPHY OIL, INC., ET AL.　　　　　　SECTION: R(4)


**ORDER AND REASONS**

Before the Court is defendant Murphy Oil, Inc.'s Motion for
Summary Judgment.  (R. Doc. 17.)  Murphy contends that it is
immune from tort liability by virtue of Louisiana workers'
compensation laws.  For the following reasons, Murphy's motion is
GRANTED.


**I.　Background**

On the evening of June 18, 2008, plaintiff Craig Joseph
Berthelot, Jr. responded to a telephone call from a Murphy

employee concerning a power outage at Murphy's oil refinery in Chalmette, Louisiana. (R. Doc. 24, Ex. A ¶ 2.) After arriving at the refinery, Berthelot began performing repairs on a high voltage transformer. (*Id.* ¶ 4-10.) He suffered injuries when a fuse and the transformer "blew up simultaneously." (*Id.* ¶ 11.) According to Berthelot, the power outage was "confined only to a restricted area," and the refinery continued to be "operational" and generate "its products, goods or services" during the outage. (*Id.* at 30-31.) According to Murphy's Human Resources Manager, Carl Zornes, the work performed by Berthelot was "an integral part of and essential to the ability of Murphy to generate its goods, products or services." (R. Doc. 17, Ex. C ¶ 7.) At the time of the accident, it is undisputed that Murphy Oil had no high voltage lineman on its payroll or work force and did not train its employees to work on high voltage power lines. (*Id.* ¶ 25.) Instead, Murphy hired outside contractors to perform high voltage work. (*Id.* ¶¶ 25, 27.)

On or about March 10, 2005, Murphy entered into a "General Agreement for Work Performed at the Meraux Refinery" (the "General Agreement") with Ordes Electric, Inc., a non-party. (R. Doc. 17, Ex. B; R. Doc. 17, Ex. C ¶ 3; R. Doc. 29, Ex. A ¶ 2.) Article XX of the General Agreement provides, in full:

ARTICLE XX – STATUTORY EMPLOYER STATUS OF MURPHY

CONTRACTOR recognizes and agrees that for purposes of
Louisiana State Workmen's Compensation Laws MURPHY is a
statutory employer of CONTRACTOR's employees – defined to
include CONTRACTOR's direct, borrowed, special or statutory
employees, including without limitations subcontractors and
vendors, their subcontractors and vendors, and the employees
and agents of any of the foregoing – and all work and
operations performed by CONTRACTOR and its employees
pursuant to this GENERAL AGREEMENT are an integral part of
and are essential to the ability of MURPHY to generate
MURPHY's goods, products or services.  In further
consideration of the amounts to be received by CONTRACTOR
pursuant to this GENERAL AGREEMENT, MURPHY and CONTRACTOR
agree that CONTRACTOR shall be responsible for the payment
of all compensation benefits paid to or for the benefit of
CONTRACTOR's employees.  CONTRACTOR and/or CONTRACTOR's
underwriters agree that they shall have no right to seek and
shall not seek any contribution or indemnity from MURPHY for
any compensation benefits paid by CONTRACTOR and/or
CONTRACTOR's underwriters.

(R. Doc. 17, Ex. B art. XX.)

Purportedly pursuant to the General Agreement, Ordes entered

into an oral subcontract agreement with Ca-Par Electric, Inc.,

also a non-party, "to perform some electrical repairs on a

transformer at the Murphy refinery."  (R. Doc. 17, Ex. C ¶ 4; *see

also* R. Doc. 29, Ex. A ¶ 3.)  At the time of the accident,

Berthelot worked as a journeyman lineman for Ca-Par.  (R. Doc.

24, Ex. A ¶ 3.)  Berthelot asserts that he was "employed" by Ca-

Par (*id.*), but supplied his own tools and bucket truck (*id.* ¶

19).  He also asserts that he turned in time sheets only to Ca-

Par and Ordes and received compensation from only Ca-Par.  (*Id.*

3

¶¶ 21-23.)  At no time did Berthelot receive tools or
compensation directly from Murphy.  (*Id.* ¶¶ 20, 22.)


* * *


Murphy now moves for summary judgment that it is immune from
tort liability under Louisiana's workers' compensation laws and
therefore Berthelot may not assert tort claims against it.


## II.  LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the
discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and
that the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317,
322-23 (1986).  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075
(5th Cir. 1994).  When assessing whether a dispute as to any
material fact exists, the Court considers "all of the evidence in
the record but refrains from making credibility determinations or
weighing the evidence."  *Delta & Pine Land Co. v. Nationwide
Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).  All
reasonable inferences are drawn in favor of the nonmoving party,
but "unsupported allegations or affidavits setting forth
'ultimate or conclusory facts and conclusions of law' are

insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See,*

*e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith for and on*
*Behalf of Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198
(5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).


**III. DISCUSSION**

**A.   Louisiana Workers' Compensation Legislation and the**
**      Statutory Employer**

Louisiana enacted workers' compensation legislation early in
the twentieth century "not to abrogate existing tort remedies
that afforded protection to workers, but to provide social
insurance to compensate victims of industrial accidents because
it was believed that the limited rights of recovery under tort
law were inadequate to protect these individuals." *Allen v.*
*State of Louisiana*, 842 So.2d 373, 377 (La. 2003).  The
legislation reflects a fundamental compromise between workers and
employers:  the worker gives up his right to full damages in
favor of an assured and expeditious claim for essentials; and the
employer has no defense even when it is not at fault.  *Id.*
Workers' compensation legislation has also consistently reflected
a concern that employers may attempt to circumvent their
statutory obligations through the use of intermediaries, such as
contractors and subcontractors.  *See Allen*, 842 So.2d at 377.

Apparently to ensure that injured workers have an effective remedy, the Louisiana legislature has settled on the concept of the "statutory employer." The concept of the statutory employer expands the range of entities potentially liable to an injured employee for workers' compensation benefits, and thus makes it more difficult for an entity to avoid workers' compensation liability by operating through layers of intermediaries. But because of the fundamental compromise between workers and employers underlying workers' compensation legislation, the concept of the statutory employer concomitantly expands the range of entities that may avoid tort liability, even though these entities may never be asked to pay worker's compensation benefits for a particular injury. *See* La. Rev. Stat. Ann. § 23:1032(A)(1)(a) (providing that workers' compensation rights and remedies are exclusive in most cases).

The Louisiana workers' compensation legislation has always provided that a principal who undertakes to have work performed by a contractor is a "statutory employer" with respect to work that is "a part of" the principal's "trade, business, or occupation." *See* 1914 La. Acts, No. 20, § 6 (1914); La. Rev. Stat. Ann. § 23:1061. This is often referred to as the "trade, business or occupation" defense. *See Allen*, 842 So.2d at 378. Precisely what work is part of a principal's trade, business or

occupation has long been fertile ground for litigation, and it is
the main topic of dispute in this case.

In 1989, the Louisiana legislature amended the workers'
compensation statute to provide that "[t]he fact that work is
specialized or nonspecialized, is extraordinary construction or
simple maintenance, is work that is usually done by contract or
by the principal's direct employee, or is routine or
unpredictable, shall not prevent the work undertaken by the
principal from being considered part of the principal's trade,
business, or occupation, regardless of whether the principal has
the equipment or manpower capable of performing the work." 1989
La. Acts, No. 454, § 3 (effective Jan. 1, 1990). The Louisiana
Supreme Court ultimately interpreted the 1989 amendments as
imposing a "totality of the circumstances" test. *See Kirkland v.
Riverwood Int'l USA, Inc.*, 681 So.2d 329, 336 (La. 1996). Thus,
under *Kirkland*, courts considered "all pertinent factors" in
determining whether work was a part of a principal's trade,
business or occupation *Id.* at 336.

Shortly after *Kirkland*, the Louisiana legislature again
amended the workers' compensation statute. *See* 1997 La. Acts,
No. 315, § 1 (effective June 17, 1997) (codified at La. Rev.
Stat. Ann. §§ 23:1031, 23:1061). The 1997 amendments expressly
overruled the statutory employer tests in *Kirkland*, as well as

*Berry v. Holston Well Serv.*, 488 So.2d 934 (La. 1986). *See* 1997
La. Acts, No. 315, § 2. Under the 1997 amendments, "work shall
be considered part of the principal's trade, business, or
occupation if it is an integral part of or essential to the
ability of the principal to generate that individual principal's
goods, products, or services." La. Rev. Stat. Ann. §
23:1061(A)(1). It is widely understood that the 1997 amendments
"specifically rejected" *Kirkland*'s "restrictive analysis" in
favor of a more expansive interpretation of the words "integral"
and "essential." *Ramos v. Tulane Univ. of La.*, 951 So.2d 1267,
1270 (La. App. 4th Cir. 2007); *see also Jackson v. St. Paul Ins.
Co.*, 897 So.2d 684, 689 (La. App. 1st Cir. 2004).

The 1997 amendments also added a new subsection dedicated to
a "two contract" theory of statutory employment (or the two
contract defense). *See* La. Rev. Stat. Ann. § 23:1061(A)(2);[1] *see
also Allen*, 842 So.2d at 378. The two contract theory creates a
statutory employer relationship between a general contractor and
the employees of its subcontractors, regardless of the general
contractor's trade or business. *See Allen*, 842 So.2d at 378; *see*

---

[1] Section 23:1061(A)(2) specifically provides for a
statutory employer relationship "whenever the services or work
provided by the immediate employer is contemplated by or included
in a contract between the principal and any person or entity
other than the employee's immediate employer." La. Rev. Stat.
Ann. § 23:1061(A)(2).

*also* 14 La. Civ. Law Treatise, Workers' compensation Law and Practice § 364 (stating that two contract defense intended to cover entities that are not in trade, business or occupation but rather contract to perform "one shot" task through other subcontractors). The Louisiana Supreme Court has summarized that the two contract theory applies when (1) a principal (*i.e.*, a general contractor) enters into a contract with a third party (*e.g.*, a project owner undertaking work); (2) pursuant to that contract, work must be performed; and (3) in order for the principal (*i.e.*, the general contractor) to fulfill its contractual obligation to perform the work, the principal enters into a subcontract for all or part of the work performed. *Allen*, 842 So.2d at 379. The Fifth Circuit has similarly characterized the two contract theory as applying to a principal that "has contracted to perform work and subcontracts all or a portion of the work to another." *Groover v. Scottsdale Ins. Co.*, 586 F.3d 1012, 1015 (5th Cir. 2009).

In summary, under current law, an injured worker may claim workers' compensation benefits from either: (a) a principal that undertakes to have work performed by contractors and subcontractors, as long as the work performed is an "integral part of or essential to the ability of the principal to generate [its] goods products, or services"; or (b) a principal that has

undertaken to perform work for a third party through the use of

subcontractors, regardless of the principal's trade or business.

*See id.; Allen*, 842 So.2d at 378.

Lastly, the 1997 amendments added an evidentiary

presumption. The workers' compensation legislation now provides

that in cases in which a principal is undertaking to have work

performed by a contractor (*i.e.*, cases *not* covered by the two

contract theory), a statutory employer relationship does not

exist unless there is a written contract "between the principal

and a contractor which is the employee's immediate employer or

his statutory employer, which recognizes the principal as a

statutory employer." La. Rev. Stat. Ann. § 23:1061(A)(3).[2] If

such a contract is executed, there is a "rebuttable presumption"

that a statutory employer relationship exists. *Id.* This

_____

[2] In full, section 23:1061(A)(3) provides that, in cases *not*
covered by the two contract theory, "a statutory employer
relationship shall not exist between the principal and the
contractor's employees, whether they are direct employees or
statutory employees, unless there is a written contract between
the principal and a contractor which is the employee's immediate
employer or his statutory employer. When the contract recognizes
a statutory employer relationship, there shall be a rebuttable
presumption of a statutory employer relationship between the
principal and the contractor's employees, whether direct or
statutory employees. This presumption may be overcome only by
showing that the work is not an integral part of or essential to
the ability of the principal to generate that individual
principal's goods, products, or services." La. Rev. Stat. Ann. §
23:1061(A)(3).

presumption may be rebutted "only by showing that the work is not an integral part of or essential to the ability of the principal" to generate its "goods, products, or services." *Id.* Once the presumption arises, the burden of rebuttal shifts to the worker. *Everett v. Rubicon, Inc.*, 938 So.2d 1032, 1042 (La. App. 1st Cir. 2006).

**B.    Application**

Murphy claims that it is entitled to assert the "trade, business or occupation" defense provided in § 23:1061(A)(1). To prevail on this defense, Murphy must demonstrate that both: (1) it entered into a written contract with Berthelot's immediate employer or his statutory employer; and (2) the written contract recognizes Murphy as a statutory employer. La. Rev. Stat. Ann. § 23:1061(A)(3). If Murphy makes this showing, the burden shifts to Berthelot to come forward with sufficient evidence for a reasonable jury to find that the work he performed was not an integral part of or essential to Murphy's ability to generate goods, products or services. *Id.* The Court finds that Murphy has satisfied its burden, and Berthelot has not.

1.    <u>Ordes is Berthelot's statutory employer</u>

To prevail on its trade, business or occupation defense,

Murphy must first demonstrate that it entered into a written
contract with a contractor that is Berthelot's "immediate
employer or his statutory employer." La. Rev. Stat. Ann. §
23:1061(A)(3). There is no evidence in the record of a written
contract between Murphy and Berthelot's "immediate" employer, Ca-
Par. There is, however, a written contract (*i.e.*, the General
Agreement) between Murphy and Ordes. Murphy must therefore
demonstrate that Ordes is Berthelot's "statutory" employer.

There is no material issue of fact that Ordes is Berthelot's
statutory employer. Under the two-contract theory, a statutory
employer relationship arises when the work performed by the
immediate employer is contemplated by a contract between the
principal and a third-party. *See* La. Rev. Stat. Ann. §
23:1061(A)(2); *Allen*, 842 So.2d at 379. In this case, the work
performed by Berthelot's immediate employer (Ca-Par) is
contemplated by the General Agreement between the principal
(Ordes) and a third-party (Murphy). The General Agreement
defines the conditions under which Ordes is permitted to perform
work at Murphy's refinery, and it anticipates that this work will
be performed by subcontractors. The General Agreement restricts
the hours that Ordes's subcontractors may work (*see* R. Doc. 17,
Ex. B art. I.C); it provides safety guidelines for Ordes's
subcontractors (*id.* art. XVII.A, XVII.B); and it governs Murphy's

legal relations with Ordes's subcontractors and their employees
(*id.* art. XX). Moreover, Carl Zornes, on behalf of Murphy, has
submitted an affidavit stating that "[p]ursuant to this General
Agreement, Ordes subcontracted with Ca-Par . . . to perform some
electrical repairs on a transformer at the Murphy refinery."
This evidence is uncontradicted, and it is sufficient to
demonstrate that the General Agreement "contemplated" the
"services or work" provided by Ca-Par. La. Rev. Stat. Ann. §
23:1610(A)(2). Although the General Agreement does not
specifically identify Ca-Par by name, the Court has found no
authority for imposing such a requirement and declines to do so
particularly in light of the Louisiana legislature's repeated
attempts to expand the definition of the statutory employer.
Accordingly, the Court finds that the work performed by Ca-Par
and Berthelot was contemplated by the General Agreement between
Ordes and Murphy.


    2.    The General Agreement between Murphy and Ordes
          recognizes Murphy as a statutory employer

    Having demonstrated that Ordes is Berthelot's statutory
employer, Murphy must next demonstrate that its written contract
with Ordes "recognizes [Murphy] as a statutory employer." La.
Rev. Stat. Ann. § 23:1061(A)(3). There is no material issue of

14

fact about whether Murphy has met this requirement.  The General

Agreement provides that "MURPHY is a statutory employer of

[ORDES]'s employees - defined to include [ORDES]'s direct,

borrowed, special or *statutory employees*, *including* without

limitations *subcontractors* and vendors, their subcontractors and

vendors, *and the employees and agents of any of the foregoing*."

(R. Doc. 17, Ex. B art. XX (emphasis added).)  It has already

been established that Berthelot was Ordes's statutory employee.

Moreover, it is not disputed that Ca-Par was Ordes's

subcontractor, nor that Berthelot was Ca-Par's employee.  The

General Agreement thus recognizes a statutory employer

relationship between Murphy and Berthelot.


> 3. <u>Berthelot has failed to demonstrate that his work was</u>
> <u>not an integral part of or essential to Murphy's</u>
> <u>ability to generate goods, products or services</u>

Because the General Agreement recognizes Murphy as

Berthelot's statutory employer, there is a rebuttable presumption

that Murphy is Berthelot's statutory employer.  La. Rev. Stat.

Ann. § 23:1061(A)(3).  The burden now shifts to Berthelot to come

forward with sufficient evidence for a reasonable jury to find

that the work he performed was "not an integral part of or

essential to" Murphy's ability to generate "goods, products, or

services." *Id.; Everett*, 938 So.2d at 1042.  The Court finds
that Berthelot has not met his burden.

The Court does not interpret the words "integral" and
"essential" on a blank slate.  The Louisiana legislature has made
it very clear that these words should be expansively construed.
*See, e.g., Ramos*, 951 So.2d at 1270; *Jackson*, 897 So.2d at 689;
*Everett*, 938 So.2d at 1042-43.  The Court has found only a single
case finding that a contractor's work was not essential or
integral to an employer's operations under the 1997 amendments.
See *Jordan v. Central Mgm't Co.*, 745 So.2d 116, 122 (La. App. 3d
Cir. 1999) (finding luxury beautician services not essential or
integral to nursing home).  Several courts, by contrast, have
found that work outside an employer's core operations may still
be essential or integral to its operations.  *See, e.g., id.;*
*Johnson v. Tenn. Gas. Pipeline Co.*, 99 F. Supp. 2d 755, 758 (E.D.
La. 2000) (finding catering services essential to oil and gas
compressor facility); *Oliver v. Day & Zimmermann*, Civ. A. No. 05-
3072, 2006 WL 508047, at *2 (E.D. La. Feb. 22, 2006) (finding
security services essential to oil refinery's operations); *Hodges*
*v. The Mosaic Co.*, Civ. A. No. 05-5201, 2007 WL 2008503, at *3
(E.D. La. July 6, 2007) (finding installation of electrician
scaffolding essential to chemical manufacturer's operations).  A
Louisiana Court of Appeals has specifically held that repair work

16

by an electric company employee was integral to the effective operation of Tulane University's library because students study and conduct research at all hours of the day and night. *Ramos*, 951 So.2d at 1270. The Court finds little to distinguish this case from *Ramos*, and Berthelot offers no help.

Berthelot has submitted an affidavit with the following relevant, non-conclusory assertions:

1. At 9:00 p.m. on June 18, 2008, Berthelot was contacted by Murphy to fix a power outage involving a high voltage transformer that was connected to Murphy's equipment. The equipment could not be operated while the work was performed. (R. Doc. 24, Ex. A ¶¶ 2-3, 8-9.)

2. At the time of the accident, Berthelot was using his own tools and was not provided any tools or equipment from Murphy. (R. Doc. 24, Ex. A ¶¶ 19-20.)

2. Murphy has no high voltage lineman on payroll or on its work force. (*Id.* ¶ 25.)

3. Murphy's employees are not trained to work on high voltage power lines, and all high voltage jobs are done by outside contractors. (*Id.* ¶ 27.)

4. Murphy was not in the business of operating or working on high voltage power lines. (*Id.* ¶ 28.)

5. At the time of the accident, the power outage at the refinery was confined to a restricted area, the refinery remained operational, and the refinery continued generating its products, goods or services. (*Id.* ¶¶ 30-31.)

6. Berthelot filled out time sheets that were turned in to Ca-Par and Ordes but not Murphy. Berthelot did not receive compensation from Murphy. (*Id.* ¶¶ 21-23.)

Distilled to its essence, Berthelot contends that his work was not integral or essential to Murphy's business because the work could not have been performed by Murphy itself, and because Murphy continued producing goods and services while the work was performed. These assertions are insufficient to send this case to a jury. The 1997 amendments made clear that whether an employer itself can perform work does not determine its statutory employer status. *See* 1997 La. Acts, No. 315, § 2 (overruling statutory employer tests in *Kirkland* and *Berry*). Under *Kirkland*, courts weighed whether the alleged principal, *inter alia*, "customarily used his own employees to perform the work" and "had the equipment and personnel capable of performing the contract work." 681 So.2d at 336. The 1997 amendments "specifically rejected" this "restrictive analysis" in favor a more expansive interpretation of the words "integral" and "essential." *Ramos*, 951 So.2d at 1270; *see also Everett*, 938 So.2d at 1043 (plaintiff may no longer simply conform arguments to pre-1997 jurisprudence). As the Fifth Circuit has observed, there are important policy reasons for not relying on whether work could in fact be performed by an employer:

> If the test under this statute were whether the employer had any employees engaged in similar functions, the employer could easily subvert the statute by contracting out all of the various parts of his business. For example, if the employer were an integrated oil company, he could contract

> out all his drilling activity, pipeline construction and
> maintenance, refining, and petrochemical processing and
> virtually eliminate workmen's compensation coverage leaving
> the workers to collect from a possibly insolvent contractor.

*Arnold v. Shell Oil Co.*, 419 F.2d 43, 50 (5th Cir. 1969).

Although Berthelot admits that a part of Murphy's plant lost power during the attempted repair of the transformer, he asserts that his work was not essential because Murphy was able to continue producing goods and services while the work was performed. This proposed interpretation of "essential" and "integral" is unsupported by legal authorities, and the Court rejects it. Restricting statutory employment to the rare situations in which an employer entirely ceases operations would eliminate workers' compensation for most contract workers. This plainly was not the intent of the 1997 amendments, nor of Louisiana's workers' compensation legislation at any other point in its history.

The fact of the matter is that working electricity is an essential part of Murphy's day-to-day operations, and Berthelot was performing work to maintain the uninterrupted flow of this electricity to Murphy's equipment. *See Ramos*, 951 So.2d at 1270. Berthelot concedes that the high voltage transformer on which he was working was connected to Murphy's equipment, and that the equipment could not be operated while the work was performed.

19

(R. Doc. 24, Ex. A ¶¶ 2-3, 8-9.)  Berthelot also concedes that

the transformer was important enough to Murphy's operations that

he was called to fix the power outage at 9:00 p.m.  (*Id.* ¶ 2.)

Under Louisiana law, this is sufficient to establish that his

work was essential to or an integral part of Murphy's ability to

produce goods, products or services.


    4.    <u>The General Agreement does not violate public policy</u>

    One final point deserves mention.  Berthelot objects to the

portion of the General Agreement providing that "MURPHY and

CONTRACTOR agree that CONTRACTOR shall be responsible for the

payment of all compensation benefits paid to or for the benefit

of CONTRACTOR's employees."  (R. Doc. 17, Ex. B art. XX.)

According to Berthelot, Murphy has impermissibly attempted to

achieve the benefits of tort immunity without assuming the

burdens of workers' compensation liability.  A related issue was

recently treated by a Louisiana appellate court in *Prejean v.*

*Maint. Enter., Inc.*, 8 So.3d 766 (La. App. 4th Cir. 2009).  In

*Prejean*, the court invalidated an entire article of a Murphy

contract because the article provided that Murphy would be liable

to pay workers' compensation benefits only if the injured

worker's immediate employer were unable to meet its obligations.

*Id.* at 776.  The court stated that "[b]ecause Murphy Oil did not

accept unconditionally, implicitly or explicitly, the *obligation* of a statutory employer, it cannot obtain the *benefit* of a statutory employer, which is tort immunity." *Id.* The court observed, however, that a statutory employer was not prohibited from contracting as to rights of contribution or indemnity. *Id.* at 774.

Although the Court is troubled by Murphy's attempt to have its proverbial cake and eat it too, the Court takes a different tack than *Prejean*. The basic purpose of Louisiana workers' compensation legislation is to broaden workers' compensation remedies, not narrow them. The first sentence of article XX of the General Agreement states that Murphy is "a statutory employer" for purposes of "Louisiana State Workmen's Compensation Laws." (R. Doc. 17, Ex. B art. XX.) This sentence is clear and unambiguous and will be enforced. For the reasons already explained, Murphy is Berthelot's statutory employer, and Murphy therefore may be obligated to pay Berthelot's workers' compensation benefits. *See* La. Rev. Stat. Ann. § 1061(A)(1). To the extent the second or third sentences of article XX are inconsistent with these obligations, they are unenforceable *vis-a-vis* Berthelot. *See* La. Rev. Stat. Ann. § 23:1033 ("No contract, rule, regulation or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability

created by this Chapter except as herein provided."). To the extent Murphy seeks indemnity or contribution from Ordes, that issue is not before the Court.

**IV.  CONCLUSION**

For the reasons stated, Murphy's motion for summary judgment is GRANTED.

New Orleans, Louisiana, this 7th day of January, 2010.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE